962 So.2d 1198 (2007)
STATE of Louisiana, Appellee
v.
Barry BAKER, Appellant.
No. 41,555-KA.
Court of Appeal of Louisiana, Second Circuit.
August 15, 2007.
*1199 Louisiana Appellate Project by James E. Beal, Jonesboro, for Appellant.
Walter E. May, Jr., District Attorney, H. Russell Davis, Kenneth P. Haines, Assistant District Attorneys, for Appellee.
Before WILLIAMS, GASKINS and MOORE, JJ.
MOORE, J.
Barry Baker appeals his conviction of second degree murder arising from the *1200 shooting death of his wife, Melanie Baker. He contends that the evidence supports only a verdict of manslaughter. We affirm.

Factual Background
In November 2003, Baker and Melanie were physically separated; according to Baker's cousin, Tanisha Baker, they were "going through some problems." On the afternoon of November 15, Baker was driving around the area of Gibsland, Louisiana, with Darmekus Clark, a friend. Baker's car broke down, so he borrowed a beige Pontiac Grand Am that belonged to his aunt, Sarah Baker, with whom Baker was living during the separation.[1] According to Clark, they saw Melanie's car broken down on the side of the road near Homer. They drove to the couple's former marital home to pick up some work clothes, and then to Melanie's mother's house, but she was not at either place.
Crossing the Blue Goose Bridge on Hwy. 80, Baker spotted Melanie driving a maroon Mustang which did not belong to the couple. Tanisha Baker testified that Melanie had borrowed the car from Paul Kingsby, a man in Arcadia. Upon seeing Melanie in the Mustang, Baker said, "There's my wife right there." Melanie was driving her six-year-old son, Matthew; Baker's cousin, Tanisha; and the couple's friend, Toria Coleman. Baker began to pursue them through Gibsland; Toria testified that Melanie "smashed the gas" in the vain effort to elude him.
Although the witnesses' accounts vary slightly, Melanie came to the corner of Third and Mill Streets, where the car either struck a curb or ran off the road. Baker then swerved the Grand Am diagonally in front of the Mustang. He got out, walked to the driver's door of the Mustang and confronted his wife with a handgun. The other occupants fled the Mustang except for Matthew, who stood by the passenger door.
Baker accused Melanie of "playing games" with him: he was giving her all his money and was going to kill her. Matthew screamed at him, "Don't do it!," but Baker shot her twice at close range, once in the chest and once in the head. He then pointed the gun at Tanisha, who had taken refuge beside a nearby abandoned house, and said, "I should kill you too," but he did not fire any more shots.[2] He told Matthew, who was still standing by the Mustang, "I'm sorry, boy, sorry I did it."
Baker then got back in the Grand Am. Clark told him what he just did was wrong, but Baker replied, "Shut up, I'm gone." Baker dropped off Clark, returned to Sarah Baker's house and told her to call 911 because Melanie was dead. He also told a neighbor he had shot Melanie; he loved her, but she was "messing with" him, taking all his money and letting other men drop her off at home. The Gibsland police chief, William Cato, took him into custody without incident. Investigating officers never recovered the murder weapon.
Paramedics called to the scene of the shooting found Melanie's body slumped in the driver's seat of the Mustang without a pulse or any other vital signs. The coroner's report confirmed that she died from multiple gunshot wounds.
Baker was indicted for the second degree murder of Melanie and for possession of a firearm by a convicted felon. The counts were severed and Baker proceeded *1201 to jury trial on the homicide charge in November 2005.
The witnesses described the shooting as summarized above. In addition, Darmekus Clark, Baker's friend and passenger on the day of the crime, insisted that he never saw Baker with a gun. He described Baker as calm before and after the shooting, but he would not speculate "what was going through that man's head." He denied knowing anything about Paul Kingsby, the owner of the Mustang.
Tanisha Baker testified that the day before the shooting, she and Melanie had been riding in Melanie's car until it broke down. When Tanisha woke up the next morning, Melanie was not at home; Tanisha assumed that Paul Kingsby had picked her up late that night. Around midmorning, Melanie returned home, driving Kingsby's Mustang. Tanisha recalled that while Melanie was out, Baker had phoned twice; she (Tanisha) had no idea that seeing Melanie in another man's car would upset him so.
Sarah Baker testified that Baker came to borrow her car that day and was gone only about half an hour. She did not know Paul Kingsby, but testified that Baker said Kingsby was threatening to kill him.
By a vote of 11-1, the jury found Baker guilty as charged of second degree murder. The court imposed the mandatory life sentence without benefits, and this appeal followed. The only issue is sufficiency of the evidence.

Applicable Law
The constitutional standard of appellate review for sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, XXXX-XXXX (La.5/20/03), 851 So.2d 921. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.2/22/06), 922 So.2d 517. It is not the function of a reviewing court to assess credibility or reweigh the evidence. State v. Marcantel, XXXX-XXXX (La.4/3/02), 815 So.2d 50.
Absent internal contradiction or irreconcilable conflict with the physical evidence, a single witness's testimony, if believed by the fact finder, is sufficient to support a factual conclusion. State v. Marshall, XXXX-XXXX (La.11/29/06), 943 So.2d 362; State v. White, 28,095 (La.App. 2 Cir. 5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760.
Specific intent is a state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow from his acts or omissions. La. R.S. 14:10(1). Specific intent may be inferred from the circumstances of the transaction and actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Davis, 40,382 (La.App. 2 Cir. 10/26/05), 914 So.2d 1129, writ denied, 2005-2419 (La.4/17/06), 926 So.2d 512. Deliberately pointing and firing a deadly weapon at close range are circumstances which will support a finding of specific intent to kill. State v. Brown, XXXX-XXXX (La.4/12/05), 907 So.2d 1; State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997).
Second degree murder is defined as the killing of a human being "when the offender has a specific intent to kill or to inflict great bodily harm." La. R.S. 14:30.1 A(1). Manslaughter is defined as a "homicide which would be first or second *1202 degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection." La. R.S. 14:31 A(1); State v. Quiambao, 36,587 (La. App. 2 Cir. 12/11/02), 833 So.2d 1103, writ denied, XXXX-XXXX (La.5/16/03), 843 So.2d 1130. The elements of "sudden passion" and "heat of blood" are mitigatory factors in the nature of a defense, and when such factors are established by a preponderance of the evidence, a verdict for murder is inappropriate. State v. Leger, XXXX-XXXX (La.7/10/06), 936 So.2d 108; State v. Deal, XXXX-XXXX (La.11/28/01), 802 So.2d 1254, cert. denied, 537 U.S. 828, 123 S.Ct. 124, 154 L.Ed.2d 42 (2002). Provocation and time for cooling are questions for the jury to be determined under the standard of the average or ordinary person, one with ordinary self-control; if a man unreasonably permits his impulse and passion to obscure his judgment, he will be fully responsible for the consequences of his act. State v. Leger, supra, and citations therein.

Discussion
By his sole assignment of error, Baker contends the evidence supported only a conviction of manslaughter, as "the defendant went into a rage when he saw his wife driving his enemy's automobile. He lost all sense of cool reflection and, within minutes, she was dead."
The state responds that the record does not show that Kingsby was Baker's "enemy" and, at any rate, seeing Melanie in his car comes nowhere near the level of provocation required to reduce criminal liability from murder to manslaughter. The state contends that even catching an estranged wife with another man has been found insufficient provocation to support a reduced verdict of manslaughter. State v. Hamilton, 99-523 (La.App. 3 Cir. 11/3/99), 747 So.2d 164.
After careful review, we find the evidence simply does not support the hypothesis that Kingsby was Baker's "enemy." Baker's aunt, Sarah Baker, testified that "more than once," Baker told her Kingsby "had been threatening to kill him," but this was obviously hearsay and the point was not developed by further examination. Baker's friend, Clark, and cousin, Tanisha, presumably would have been in a good position to know of any animosity between Baker and Kingsby, but even under close cross-examination they could not confirm this; they recognized Kingsby only by name and had never met him. Viewed in the light most favorable to the state, this testimony does not show that Kingsby was Baker's enemy or adversary. The jury could fairly conclude that no reasonable person would fly into a sudden rage simply upon seeing his estranged wife driving the other man's car.
On the contrary, the record shows that earlier in the day, Baker phoned twice looking for Melanie; he went to two different places where she might have been, but still could not find her; he spent the better part of the day driving around (first in his own car, and then in his aunt's), armed with a handgun that he concealed from his passenger. These facts strongly suggest that Baker was on a mission to locate his wife with the intent to shoot her. When he found her, he pursued her at high speed, ran her off the road and blocked her egress. Before firing the gun, he told her, "I told you I was going to kill you" or "I told you about playing games with me." These facts strongly suggest that the plan was preformed and did not result from seeing her driving another man's car.
Viewed in the light most favorable to the state, this evidence supports the essential element of specific intent to kill or inflict great bodily harm. A reasonable juror could have rejected the theory that the *1203 shooting came from sudden passion or heat of blood. The assignment of error lacks merit.

Error Patent Review
At sentencing, the district court did not advise Baker of the time period in which to apply for post conviction relief, as required by La. C. Cr. P. 930.8 C. By this opinion, the court now advises him that no application for post conviction relief shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under La. C. Cr. P. art. 914 or 922. See State v. Price, 40,437 (La.App. 2 Cir. 1/25/06), 920 So.2d 389. We find nothing else we consider to be error patent.

Conclusion
For the reasons expressed, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The state's brief refers to Sarah Baker as defendant's mother, but she testified that she was his aunt; Tanisha Baker confirmed that she (Tanisha) was Sarah's daughter and defendant's cousin.
[2] There was some testimony that Baker objected to Melanie's socializing with Tanisha.