976 So.2d 297 (2008)
STATE of Louisiana, Appellee
v.
Johnny Lee O'NEAL, Appellant.
No. 43,055-KA.
Court of Appeal of Louisiana, Second Circuit.
February 13, 2008.
*299 Louisiana Appellate Project, by Mark Owen Foster, for Appellant.
Paul J. Carmouche, District Attorney, Catherine M. Estopinal, Lea R. Hall, Jr., Brady D. O'Callaghan, Assistant District Attorneys, for Appellee.
Before CARAWAY, MOORE and LOLLEY, JJ.
LOLLEY, J.
This criminal appeal arises from the First Judicial District Court, Parish of Caddo, State of Louisiana, where a unanimous jury convicted defendant, Johnny Lee O'Neal, of second degree murder, a violation of La. R.S. 14:30.1. O'Neal was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence. O'Neal now appeals. For the following reasons, we affirm.

FACTS
During the early evening hours of December 23, 2005, 43-year-old Calvin Moore began mowing the lawn at his house located in Caddo Parish, Louisiana. The defendant, O'Neal, lived next door to Moore. Tony Randall lived next door to O'Neal and two doors down from Moore. Randall was standing in his front yard and saw Moore mowing his lawn and noticed O'Neal walking towards Moore. Randall testified that he could hear Moore telling O'Neal to "get out of my face," but he could not hear what O'Neal was saying. Randall explained that he stepped behind the car in his driveway sensing something was about to happen and then heard Moore say, "Man, get the hell away from me. Get the hell away from me." Randall then heard eight or nine gunshots and took off running inside his house, from where he heard more gunshots fired. Because Randall did not have a telephone, he drove around the block to use someone else's telephone; but by this time, he saw police driving towards the scene. Around the same time, Huey Pickard was stopped at a stop sign while on his way to his mother's house when he noticed Moore down the street mowing his lawn. Pickard looked down for a moment but looked up when he heard shots fired. Pickard testified that when he looked up he saw a man shooting at O'Neal.
After the shooting, O'Neal went inside his house and called 911, alleging that he was standing in his front yard and that his next door neighbor had tried to run him over with the lawnmower. At approximately 6:00 p.m., Shreveport Police Officer Corley Lovett was dispatched to O'Neal's residence in response to his 911 call. Officer Lovett testified that O'Neal told him that Moore continued cutting the grass on O'Neal's property after he had asked Moore to stop, and that this had been an ongoing problem with Moore. O'Neal explained to Officer Lovett that when he asked Moore to stop cutting the grass, Moore came at him with the lawnmower with the blades up. O'Neal then told Officer Lovett that he pulled out his gun and shot at Moore; Officer Lovett testified that this was the first time he heard that there was shooting involved.
Officer Lovett asked O'Neal if he actually shot Moore, and O'Neal said he did not know. At this time, Officer Lovett went to *300 Moore's home to check on him, but no one answered. In the meantime, another neighbor, Shawn Fuller, had called 911 to report that a man was lying down in the middle of the street. The Shreveport Fire Department was dispatched to check on the man's condition. Just after Officer Lovett rang Moore's doorbell, he heard sirens and observed the Shreveport Fire Department arriving on the scene; Officer Lovett then saw Moore lying in the grass. Moore was found 10-15 yards away from the lawnmower in his driveway. As Shreveport Fire Department rendered aid to Moore, Officer Lovett took O'Neal into custody and read the Miranda rights to him. After O'Neal indicated that he understood his Miranda rights, Officer Lovett asked O'Neal about the gun, and O'Neal indicated that it was on a shelf in his front room. After obtaining permission to go into the house, Officer Lovett found the gun where O'Neal had indicated.
While O'Neal was in the back of a Shreveport Police Unit, he told Detective James Cromer that Moore had attempted to attack him with a lawnmower and that Moore had the lawnmower up with the blades showing. O'Neal told Detective Cromer that he fired his gun at least five times before going inside his house, where he then reloaded the weapon because he was afraid that Moore might come back and shoot him. Moore ultimately died as a result of multiple gunshot wounds. O'Neal was indicted and convicted by a unanimous jury for second degree murder. The trial court sentenced him to mandatory life imprisonment without benefit of parole, probation, or suspension of sentence. This appeal ensued.

LAW AND ARGUMENT

Sufficiency of the Evidence
Self-Defense
In his first assignment of error, O'Neal argues that the evidence is not sufficient to support his conviction, because the state did not prove beyond a reasonable doubt that he did not act in self-defense. Conceding that there is no question regarding the fact that he shot and killed Calvin Moore, O'Neal argues that the state's failure to prove the exact location of the property line prevented it from negating the possibility that Moore was trespassing with a deadly weapon, the lawnmower, in order to pick a fight with O'Neal. O'Neal further argues that Moore's trespassing onto his property with a deadly weapon in the dark gave him a subjectively reasonable apprehension of danger and that it does not require much effort for a lawnmower to inflict great bodily harm.
The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, reviewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731, 734 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.04/02/97), 691 So.2d 347, 348, writ denied, XXXX-XXXX (La.10/17/97), 701 So.2d 1333.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra. In the absence of internal contradictions or irreconcilable conflict with physical evidence, the testimony of *301 one witness is sufficient support for a requisite factual conclusion if that witness is believed by the trier of fact. State v. Jones, 31,613 (La.App. 2d Cir.04/01/99), 733 So.2d 127, 138, writ denied, XXXX-XXXX (La.10/01/99), 748 So.2d 434, citing State v. Ford, 28,724 (La.App. 2d Cir.10/30/96), 682 So.2d 847, writ denied, XXXX-XXXX (La.05/15/99), 745 So.2d 12.
This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, XXXX-XXXX (La.10/04/96), 680 So.2d 1165, 1166. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, XXXX-XXXX (La.10/16/95), 661 So.2d 442, 443. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of witnesses, the matter is one of the weight, not the sufficiency, of the evidence. State v. Allen, 36,180 (La.App. 2d Cir.09/18/02), 828 So.2d 622, 626, writs denied, 2002-2595 (La.03/28/03), 840 So.2d 566, 2002-2997 (La.06/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.08/30/02), 827 So.2d 508, 515, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
According to La. R.S. 14:30.1(A)(1), second degree murder "is the killing of a human being: (1) when the offender has the specific intent to kill or to inflict great bodily injury." The state proved that O'Neal shot Moore six times with a .45 caliber semiautomatic handgun, thereby causing Moore's death. According to La. R.S. 14:10(1), "specific intent" is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." Further, the specific intent to kill may be inferred by the trier of fact from the circumstances, such as discharging a firearm at close range to the victim. State v. Wilson, 40,767 (La.App. 2d Cir.08/23/06), 938 So.2d 1111, 1120, writ denied, 2006-2323 (La.04/20/07), 954 So.2d 159, cert. denied, ___ U.S. ___, 128 S.Ct. 275, 169 L.Ed.2d 201 (2007).
O'Neal concedes that there is no question regarding the fact that he shot and killed Moore. Even so, O'Neal argues that he was acting in self-defense when he did so. When self-defense is raised as an issue by O'Neal, the state has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. State v. Garner, 39,731 (La. App. 2d Cir.09/08/05), 913 So.2d 874, writ denied, 2005-2567 (La.05/26/06), 930 So.2d 19. Self-defense is justification for a killing only if the person committing the homicide reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that deadly force is necessary to save his life. La. R.S. 14:20 A(1); State v. Dooley, 38,763 (La.App. 2d Cir.09/22/04), 882 So.2d 731, 742, writ denied, 2004-2645 (La.02/18/05), 896 So.2d 30; State v. Cotton, 25,940 (La. App. 2d Cir.03/30/94), 634 So.2d 937, 939. Factors to consider in determining whether a defendant had a reasonable belief that the killing was necessary are the excitement and confusion of the situation, the possibility of using force or violence short of killing, and the defendant's knowledge of the assailant's bad character. State v. Spivey, 38,243 (La.App. 2d Cir.05/12/04), 874 So.2d 352, 357; State v. Hardeman, 467 So.2d 1163, 1170 (La.App. 2d Cir. 1985). Although there is no unqualified duty to retreat, the possibility of escape is *302 a factor to consider in determining whether a defendant had a reasonable belief that the use of deadly force was necessary to avoid the danger. State v. Brown, 414 So.2d 726, 730 (La.1982).
When the defendant challenges the sufficiency of the evidence in such a case, the question becomes whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense. State v. Wilson, 42,440 (La.App. 2d Cir.09/19/07), 965 So.2d 992, 996, citing State v. Matthews, 464 So.2d 298 (La. 1985). Here, the claim of self-defense was raised in opening statements, where it was alleged that Moore charged at O'Neal using a lawnmower with its blades exposed after a heated exchange when O'Neal first asked Moore not to cut his grass. Evidence of the statements O'Neal made after the shooting were presented, namely his 911 call where he reported that his next door neighbor had tried to run him over with the lawnmower and his statements to Officer Lovett and Detective Cromer that Moore came at him with the blades up after he asked him to stop cutting his grass.
However, the state presented two eyewitnesses who did not see Moore chasing O'Neal with the lawnmower. Tony Randall, an auto mechanic, testified that he did not hear the lawnmower running at the time O'Neal and Moore were in a heated exchange and that Moore had positioned the lawnmower away from O'Neal. Huey Pickard testified that the two men were facing each other when the shooting began, but then O'Neal turned to run after the shooting began. Pickard also testified to the following: that both men were standing up straight; the lawnmower was just sitting there during the exchange; the lawnmower (handlebar) had not been pushed down to the ground; and, that the shooter was not being chased.
While O'Neal argues that the witnesses were not credible because a website shows that it would have been dark at the time of the shooting, he did not offer any evidence at trial to contradict the witnesses who testified that there was enough light to see what was happening. Randall testified that it was getting dark and that a light was on from someone's house; Pickard testified that it was late evening, but there was still some daylight. Officer Lovett testified that it was dusk, but not quite dark, when he arrived at the scene. Further, the appellate court does not assess the credibility of witnesses, which is a matter of the weight of the evidence, not the sufficiency of the evidence. State v. Allen, supra; State v. Gilliam, supra.
The state demonstrated to the jury how the lawnmower would have to be positioned in order to expose the blades and how implausible it was for Moore to have chased O'Neal while operating the lawnmower in such a fashion. The state presented evidence that the thick blanket of leaves in O'Neal's yard did not appear to have been disturbed, raising suspicion with respect to O'Neal's claim that he was being chased around with a lawnmower. Also giving little credence to O'Neal's allegation that Moore mowed O'Neal's lawn after being told to stop was Shreveport Police Detective Rod Johnson who testified that it appeared that someone had just started mowing because neither yard appeared to have been mowed.
While Moore and O'Neal had past disputes regarding loud noise and property lines, there was no evidence of violence between them or any other evidence to indicate that O'Neal had any reason to fear Moore. Thus, considering the totality of the circumstance, the state presented sufficient evidence from which a reasonable *303 jury could determine that O'Neal had no reasonable belief that he was in imminent danger of losing his life or receiving great bodily harm and that deadly force was necessary to save his life.
Further, with O'Neal's admission that he was armed with a gun when he approached Moore and given Randall's testimony that he saw O'Neal walk toward Moore, it would appear that O'Neal was actually the aggressor. As set forth in La. R.S. 14:21, "[a] person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict." State v. Lathan, 41,855 (La.App. 2d Cir.02/28/07), 953 So.2d 890, 896-897, citing State v. Taylor, 621 So.2d 141 (La.App. 2d Cir.1993), writ denied, 1993-2054 (La.02/11/94), 634 So.2d 371. Thus, as the aggressor, O'Neal is not entitled to the claim of self-defense; rather, the totality of the evidence indicates that O'Neal's statements that he acted in self-defense were self-serving. Even if O'Neal thought he was in danger, there was a disproportion in the choice of weapons when O'Neal pulled out a gun to defend against a lawnmower. Accordingly, the state presented evidence from which a reasonable jury could determine that O'Neal committed second degree murder and that O'Neal did not kill Moore out of self-defense. This assignment is therefore without merit.
Manslaughter
In his second assignment of error, O'Neal argues, in the alternative, that even if the state did prove it was not self-defense, then the evidence was only sufficient to prove manslaughter. O'Neal argues that he had no plan to kill Moore when he went out there to confront him over the grass cutting. Instead, he argues that the confrontation led him to kill Calvin Moore out of "sudden passion" or "heat of blood."
"Sudden passion" and "heat of blood" are mitigating factors in the nature of a defense, and when such factors are established by a preponderance of the evidence, a verdict for murder is inappropriate. State v. Baker, 41,555 (La.App. 2d Cir.08/15/07), 962 So.2d 1198, 1202, citing State v. Leger, XXXX-XXXX (La.07/10/06), 936 So.2d 108, cert. denied, ___ U.S. ___, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007). The burden is on the defendant to prove by a preponderance of the evidence that he acted in "sudden passion" or "heat of blood." State v. Robinson, 32,794 (La. App. 2d Cir.03/01/00), 754 So.2d 311, 321, writ denied, XXXX-XXXX (La.03/23/01), 787 So.2d 1008. In pertinent part, La. R.S. 14:31(A)(1) defines manslaughter as a "homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection." State v. Ellis, 42,286 (La.App. 2d Cir.07/11/07), 961 So.2d 636, 639, fn. 1. The defendant is not obligated to establish the factors affirmatively; the jury may infer them from the evidence presented. Id.
Provocation shall not reduce a homicide to manslaughter if the jury finds that the defendant's blood had actually cooled or that an average person's blood would have cooled, at the time the offense was committed. "`If a man unreasonably permits his impulse and passion to obscure his judgment, he will be fully responsible for the consequences of his act.'" State v. Leger, 936 So.2d at 171. Questions of provocation and time for cooling are questions for the jury to determine under the *304 standard of the average or ordinary person with ordinary self-control. Id. Physical threats or actions on the part of the victim have been found to be sufficient provocation. State v. Ruff, 504 So.2d 72 (La.App. 2d Cir.1987), writs denied, 508 So.2d 64, 65 (La.1987). Even so, mere words or gestures, no matter how insulting, will not reduce a homicide from murder to manslaughter. State v. Mitchell, 39,202 (La. App. 2d Cir.12/15/04), 889 So.2d 1257, 1263, writ denied, XXXX-XXXX (La.04/29/05), 901 So.2d 1063, citing State v. Massey, 535 So.2d 1135 (La.App. 2d Cir.1988).
As conceded by O'Neal, there is no dispute regarding the fact that he fatally shot Moore. The evidence presented at trial showed that O'Neal confronted Moore while armed with a loaded .45 caliber semiautomatic handgun. The autopsy report reflects that Moore had been shot twice in the back which supports the eyewitnesses who testified that Moore was running away when O'Neal continued to shoot at him. Afterwards, O'Neal went back to his home to reload his gun. O'Neal's statements to police indicated that the reason for the confrontation was to ask Moore to stop mowing what he believed to be his grass. As discussed previously, O'Neal's claim that Moore attacked him with a lawnmower was adequately refuted by the state's evidence, and the jury's verdict indicates that it rejected any claims of self-defense. Mere words are insufficient to establish provocation that would reduce second degree murder to manslaughter. Further, we are confident that a reasonable person would not lose his cool and kill over whether a neighbor mowed a small area of his lawn. O'Neal did not meet his burden of proving that he killed Moore while acting in "sudden passion" or "heat of blood," and, thus, he was not entitled to a verdict of manslaughter. This argument is therefore without merit.

Incomplete Trial Record
In his final assignment of error, O'Neal argues that the trial record is incomplete because it did not preserve in-court demonstrations, specifically when witnesses manipulated the lawnmower in front of the jury. O'Neal argues that this violates his right to review a complete record as set forth in La. Const. Art. 1, § 19 which states that, "No person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based."
During the testimony of Corporal Skylar Vanzant, from the Shreveport Police Department's Crime Scene Investigation Unit, the prosecutor asked him to step down from the witness stand to examine the lawnmower, which was State's Exhibit 9. The prosecutor wanted Cpl. Vanzant to show how one would have to hold down the bar that acts as a "kill switch" in order to start the lawnmower. The prosecutor asked Cpl. Vanzant to stand at the push bar of the lawnmower and demonstrate how far one would have to push the mower down in order for the blades to be pointed at someone, and the following exchange occurred:
MR. HALL: I would ask for you to stand at the push bar and tell me, how far you have to push that mower down in order for those blades to be up to where they're pointed at somebody?
CORPORAL VANZANT: I would just about have to touch the floor.
MR. HALL: Okay. Can you demonstrate what you're talking about?
CORPORAL VANZANT: (Witness complies.)
MR. HALL: Okay. Can you run like that?
CORPORAL VANZANT: No, sir.

*305 MR. HALL: You're not going to be able to chase me around?
CORPORAL VANZANT: No.
MR. HALL: Let the ladies and gentlemen see what it looks like at your shins.
CORPORAL VANZANT: (Witness complies.)
MR. HALL: Down at your knees, please, sir.
CORPORAL VANZANT: (Witness complies.)
MR. HALL: Now, at your thighs.
CORPORAL VANZANT: (Witness complies.)
MR. HALL: Even right there  I get  it's a much better position to run from; isn't it?
CORPORAL VANZANT: Yes.
MR. HALL: Is it  would it be easy?
CORPORAL VANZANT: No.
MR. HALL: Okay. Thank you, sir. According to what you and other officers observed and the jury has now seen, in order to get those blades up, you've really got to exaggerate your moves; is that correct?
CORPORAL VANZANT: Correct.
Later, during Pickard's testimony, the prosecutor asked him to demonstrate the position he witnessed of O'Neal and Moore in relation to the lawnmower at the time of the shooting:
MR. HALL: Mr. Pickard, I'm going to ask you a couple of questions about those folks using me and Mr. O'Callaghan to kind of act out what you saw.
(Mr. O'Callaghan demonstrating with lawn mower.)
* * *
MR. PICKARD: Can I get up and show you?
MR. HALL: Yeah, please do.
MR. PICKARD: Like the  like the lawn mower  from where I was sitting, it looks like the lawn mower is pretty much like this, right here. And that guy is standing about, right here.
MR. HALL: Okay.
MR. PICKARD: Probably, you know, he's just close 
MR. HALL: Okay.
MR. PICKARD:  from what it looks like to me, from where I'm sitting, he's that close, shooting.
MR. HALL: Okay. So if  if I'm the shooter 
MR. PICKARD: About that far apart.
MR. HALL:  this is what they were like?
MR. PICKARD: It's about what it looked like, right there.
MR. HALL: Okay. But the lawn mower is not 
MR. HALL: And, Mr. O'Callaghan, help me with this. And if you would do with it what Detective Vanzant  Skyler was doing yesterday. The best you can, push it down.
MR. HALL: It wasn't like that?
MR. PICKARD: No. They  he was  they were both standing up straight.
MR. HALL: He wasn't  that lawn mower, he wasn't being 
MR. HALL: Thank you, sir.
MR. HALL: He wasn't being chased around?
MR. PICKARD: No. That lawnmower be  he would have to be bent over or have his foot on it. They were both standing up straight. And when he was shooting, Calvin turned and went, like, to run. And that's when I took off up the street.
MR. HALL: Okay. Please take the witness stand again.
MR. PICKARD: (Witness complies)
*306 The record reflects that these in-court demonstrations with the lawnmower indicate that the prosecutor had witnesses manipulate the lawnmower to show the jury how implausible it would be for Moore to have chased O'Neal with the lawnmower in a way that the blades would be pointed at him. Here, O'Neal did not object to the in-court demonstrations nor did he argue on appeal that the trial court should have excluded them. Since the in-court demonstrations were not the subject of an assignment of error, the failure to preserve the in-court demonstrations is not prejudicial because it is immaterial. For the purposes of this appeal, the transcript gives such a clear description of the in-court demonstrations that it is sufficient for the record.
Furthermore, the lack of a recording of these in-court demonstrations is not prejudicial because the lawnmower itself was admitted as evidence and the jury would have had the opportunity to conduct a similar physical inspection of the lawnmower pursuant to La.C.Cr.P. art. 793(A), which states in pertinent part, "[u]pon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict." Such an examination by the jury would not have been recorded and made part of the appellate record, but the physical manipulation of evidence would have been something upon which the jury could have considered in reaching its verdict. See State v. Johnson, 34,902 (La.App. 2d Cir.09/26/01), 796 So.2d 201, 210-211, writ denied, 2003-2631 (La.11/8/04), 885 So.2d 1124. Thus, O'Neal suffered no prejudice by any such omission of a recording in the present case.
O'Neal cites State v. Draughn, XXXX-XXXX (La.01/17/07), 950 So.2d 583, cert. denied, ___ U.S. ___, 128 S.Ct. 537, 169 L.Ed.2d 377, and State v. Pinion, 2006-2346 (La.10/26/07), 968 So.2d 131, for the proposition that he is entitled to a new trial because the failure to preserve these demonstrations for the record prejudices him on appeal. Draughn and Pinion are distinguishable from the case sub judice because neither of them deal with the failure to record in-court demonstrations. In fact, there are several statutes pertaining to what must be recorded during criminal proceedings and none require that in-court demonstrations be recorded so that they may become part of the appellate record. See La.C.Cr.P. art. 888; La.C.Cr.P. art. 843; See also La. R.S. 13:962.
In reviewing the case law pertinent to in-court demonstrations, this court has previously commented on admissibility of in-court demonstrations but did not contemplate whether such should be recorded and made part of the appellate record. See State v. Hearold, 567 So.2d 132, 138 (La.App. 2d Cir.1990), reversed on other grounds, 603 So.2d 731 (La. 1992), citing State v. Rault, 445 So.2d 1203 (La.1984), cert. denied, 469 U.S. 873, 105 S.Ct. 225, 83 L.Ed.2d 154 (1984); State v. Mays, 315 So.2d 766 (La.1975). In short, there is neither statutory nor case law authority for the position that in-court demonstrations, as a matter of procedure, must be recorded and made part of the record.
Here, O'Neal does not challenge the actual demonstration, which could arguably result in the need to preserve the in-court demonstrations; instead, O'Neal merely asserts that the record is incomplete for a review on appeal. Again, since the demonstrations, are not the subject of an assignment of error, the alleged omissions are immaterial and did not prejudice O'Neal. This assignment is therefore without merit.

*307 CONCLUSION
For the foregoing reasons, Johnny Lee O'Neal's conviction and sentence are affirmed.
AFFIRMED.