961 So.2d 636 (2007)
STATE of Louisiana, Appellee
v.
William Lewis ELLIS, Appellant.
No. 42,286-KA.
Court of Appeal of Louisiana, Second Circuit.
July 11, 2007.
*638 Louisiana Appellate Project, by Mary Constance Hanes, Larrion L. Hillman, for Appellant.
John Schuyler Marvin, District Attorney, C. Sherburne Sentell III, John M. Lawrence, Assistant District Attorneys, for Appellee.
Before BROWN, STEWART and DREW, JJ.
DREW, J.
William Lewis Ellis was convicted as charged of second degree murder and unauthorized use of a motor vehicle. For the murder, he was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. For the unauthorized use of a motor vehicle conviction, he received a concurrent 10-year hard labor sentence. We affirm the convictions and sentences.

FACTS
On November 4, 2005, Marchuashau Shine ("the victim") drove up to her mother's residence and honked the horn for her mother, Clara Shine, who was caring for her 10-month-old great-grandson, K.J. The victim asked Ms. Shine if she had seen the defendant, and Ms. Shine responded that she had not. Ms. Shine then handed the infant to the victim and walked back toward the house. The defendant suddenly rushed out from behind some bushes, pulled on the vehicle's door, and wrenched it open. He then dragged the victim out of the van and began stabbing her, while she still had the infant in her arms. In an attempt to stop the attack, the victim's mother hit the defendant with a stick and a brick. Ms. Shine ultimately suffered a broken leg as a result of the struggle. The fight lasted for approximately five minutes, during which the defendant inflicted 45 stab wounds upon the victim. Amazingly, the infant was not physically harmed. As the defendant started to leave, he came back, slashed the victim across her face, jumped into the victim's work van, and fled the scene.
Damien Shine, the victim's 10-year-old nephew, witnessed the savage attack and called 911. The victim was rushed to the hospital, where Dr. David Tyler started blood transfusions and began closing her stab wounds. Despite his efforts, the victim bled to death before ever going into surgery.
The defendant was indicted by a grand jury on the two charges for which he was convicted and sentenced. This appeal followed.

DISCUSSION
Should the defendant have been convicted of manslaughter instead of murder?
The defendant argues that a second degree murder verdict was not rational and should be modified to manslaughter under La. C. Cr. P. art. 821(D), because:
 a preponderance of the evidence established that he acted in "the heat of blood" when he attacked the victim;
 he suddenly snapped when he caught her using cocaine with other men; and

*639  he was unable to calm down after the attack, and thus made further threats over the telephone, but once he was able to return to a normal state of mind, he surrendered to the police and gave a confession.
In response, the state asserts that:
 the defendant possessed the specific criminal intent to kill or to inflict great bodily harm necessary to sustain a conviction for second degree murder;
 specific intent need not be proven as fact, but may be inferred from this defendant's actions  lying in wait for the victim to arrive while armed with a deadly weapon (hunting knife) and stabbing the victim 45 times;
 the defendant did not assert a mental status defense nor did he present evidence in support of an altered "state of mind" defense; and
 the question of provocation was left to the jury to determine, and the jury in this case correctly concluded that sufficient provocation was not present.
The first of four types of second degree murder may be committed by the killing of a human being with specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). This is what happened here. The law as to reducing a murder to a manslaughter is clear.[1]
The evidence presented at trial was sufficient to prove that the defendant was guilty, beyond a reasonable doubt, of second degree murder, as well as the unauthorized use of a motor vehicle.
Clara Shine testified that:
 the defendant had been hiding in the bushes of her home before the attack;
 even though the victim was holding an infant, the defendant forced her out of a vehicle and began stabbing her with a knife;
 the victim pleaded with the defendant to stop, but the defendant never relented in his violent attack; and
 she (Ms. Shine) suffered a broken leg in the struggle.
Dr. Frank Peretti, a forensic pathologist who performed an autopsy on the victim, testified that the victim died from multiple stab and cutting wounds, and that there was a lack of a struggle on her part.
Detective Tippen of the Minden Police Department testified that:
 he questioned the victim once he arrived at the crime scene, and she kept responding that "Will did it";
 Ms. Shine told him that the victim had come home from work, and that the *640 defendant attacked her in the yard; and
 within minutes of the stabbing, the defendant called Ms. Shine's residence, and told him that he was "going to Shreveport to get his clique, and that he was coming back to kill everything standing."
Denettia Shine, the victim's sister, testified that the defendant made a similar threat to her during one of his calls to the residence immediately after the attack.
In light of this testimony, the reasonableness of the verdict is clear. The defendant failed to prove by a preponderance of the evidence that he was provoked to the extent necessary to deprive an average person of his self-control. Even had he been unduly provoked, he should have recovered his senses while lying in wait. In support of his provocation argument, he offered autopsy results revealing that the victim had cocaine in her system. Even if the victim had used every drug known to mankind, she certainly had a right not to be stalked and brutally stabbed to death.
The jury heard the evidence and rejected the defendant's version of the butchering, finding that this was a murder case. We agree. This is not the sort of sudden provocation contemplated by La. R.S. 14:31. Generally, provocative acts held to rise to the level of mitigating conduct have involved physical threats or actions on the part of the victim. See State v. Lombard, 486 So.2d 106 (La.1986); and State v. Ruff, 504 So.2d 72 (La.App. 2d Cir.1987), writs denied, 508 So.2d 64, 65 (La.1987). There was no evidence at the crime scene that the victim said or did anything directly to the defendant, other than to plead for mercy. Defendant's claim of manslaughter is untenable. He was clearly not entitled to the responsive verdict.
Post-stabbing photographs of victim
The defendant argues that:
 the trial court abused its discretion in allowing the state to introduce cumulative and gruesome autopsy photographs, despite the filing of a motion in limine seeking to limit the number of photographs because the cumulative prejudicial effect of so many photographs would outweigh their probative value; and
 the photographs introduced did not show the victim's wounds as they appeared after the attack at the scene, as the photos depict the wounds as they appeared after the doctor had worked on her, leaving the jury with no way to determine whether the wounds looked more gruesome because of medical intervention.
In response, the state argues that the prosecutor culled some 25 photographs down to 11 autopsy photographs and two photographs of the victim's back and face stab wounds, and the coroner's autopsy photographs were relevant and corroborated material facts required to prove that the defendant acted with a specific intent to kill or to inflict great bodily harm.
The test for admissibility of allegedly gruesome pictures is well settled.[2]
*641 Elisha Taylor, a deputy coroner, testified that she arrived at the hospital and took photographs of the victim's body, and that the photographs introduced into evidence depicted the victim's wounds as they appeared after being sutured.
After reviewing each photograph, the trial judge determined that they were not unnecessarily repetitive or gruesome and allowed them into evidence. The photographs showed the location, nature, and number of wounds sustained by the victim, and their probative value outweighed any prejudicial effect they might have had upon the jury. Moreover, the photographs served to establish that the defendant had the specific intent to kill or to inflict great bodily harm upon the victim, and the state of mind necessary to convict for second degree murder.
In this sad case, there was an abundance of other evidence that could have led the jury to convict the defendant. The victim, her mother, and her nephew all identified the defendant as the attacker. Moreover, the defendant made unsolicited incriminating statements introduced at trial through the testimony of Denettia Shine and Detective Tippen.
Since the prejudicial effect of the photographs was outweighed by their probative value, we find the defense's motion in limine was properly overruled.

DECREE
The defendant's convictions and sentences are AFFIRMED.
NOTES
[1] In pertinent part, La. R.S. 14:31 defines manslaughter as a homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection, or a homicide committed without any intent to cause death or great bodily harm. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed.

"Sudden passion" and "heat of blood" are not elements of the offense of manslaughter. Instead, they are mitigatory factors in the nature of a defense which exhibit a degree of culpability less than that present when the homicide is committed without them. State v. Lombard, 486 So.2d 106 (La.1986). A defendant who shows by a preponderance of the evidence that these mitigatory factors are present is entitled to the verdict of manslaughter. State v. Lombard, supra; State v. Jackson, 34,076 (La.App. 2d Cir.12/6/00), 774 So.2d 1046. The defendant is not obligated to establish the factors affirmatively; instead, the jury may infer them from the overall evidence presented. State v. Jackson, supra.
[2] Photographs are generally admissible if they illustrate any fact, shed any light upon an issue in the case, or are relevant to describe the person, thing, or place depicted. State v. Washington, 30,866 (La.App. 2d Cir.8/19/98), 716 So.2d 936, writ denied, 98-2473 (La.1/8/99), 734 So.2d 1229. Additionally, the cumulative nature of photographic evidence does not render it inadmissible if it corroborates the testimony of witnesses on essential matters. State v. Langley, 95-1489 (La.4/14/98), 711 So.2d 651. Photographs are not admissible if they are so gruesome as to overwhelm the jurors' reason and lead them to convict the defendant without sufficient other evidence. State v. Craig, 95-2499 (La.05/20/97), 699 So.2d 865, cert. denied, 522 U.S. 935, 118 S.Ct. 343, 139 L.Ed.2d 266 (1997); State v. Tolbert, 30,821 (La.App. 2d Cir.8/19/98), 716 So.2d 949, writ denied, 98-2562 (La.1/15/99), 736 So.2d 207. A trial court's ruling in this regard will only be disturbed if the prejudicial effect of the photographs clearly outweighs the probative value. State v. Ruffins, 32,870 (La.App. 2d Cir.12/10/99), 748 So.2d 614; State v. Washington, supra.