STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2021 KA 1116

STATE OF LOUISIANA

VERSUS

JEROME MELLION

Judgment Rendered: **APR 0 8 2022**

* * * * *

On Appeal from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court No. 5130416

Honorable Kelly Balfour, Judge Presiding[1]

* * * * *

Hillar C. Moore, III
District Attorney
Stacy L. Wright
Assistant District Attorney
Baton Rouge, LA

Attorneys for Appellee,
State of Louisiana

Lieu T. Vo Clark
Mandeville, LA

Attorney for Defendant-Appellant,
Jerome Mellion

Jerome Mellion
Angola, LA

Defendant-Appellant,
In Proper Person

* * * * *

BEFORE: WHIPPLE, C.J., PENZATO, AND HESTER, JJ.

---

[1] Judge Michael R. Erwin, who is now retired, presided over the trial.

**HESTER, J.**

The defendant, Jerome Mellion, was charged by grand jury indictment with second degree murder, a violation of La. R.S. 14:30.1, and attempted second degree murder, a violation of La. R.S. 14:27 and 14:30.1. He pled not guilty and waived his right to a trial by jury. Following a bench trial, the defendant was found guilty as charged. The defendant filed a motion for new trial and a motion for post-verdict judgment of acquittal, both of which were denied. For the second degree murder conviction, he was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. For the attempted second degree murder conviction, he was sentenced to thirty years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The sentences were ordered to run consecutively. The defendant now appeals, designating two counseled assignments of error and one pro se assignment of error. We affirm the convictions and sentences.

## FACTS

Ms. Wanda Ortiz lived in an apartment in the 3200 block of Plank Road in Baton Rouge. In the past, she had been in a relationship with the defendant, but that relationship ended and Ms. Ortiz had a new boyfriend. On one occasion when the defendant was at Ms. Ortiz's house, she took money from the defendant and never gave it back to him. On January 10, 2013, Ms. Ortiz had gotten off of work and was walking to her apartment when the defendant approached Ms. Ortiz with a knife. Ms. Ortiz passed by the window of her downstairs neighbors, the Harrises, and yelled, "Call, call, call." The Harrises heard the cry for help, and Elda Harris called 911. Michael Harris (hereinafter "Harris"), Elda's husband, went outside to help Ms. Ortiz. Harris saw the defendant stabbing Ms. Ortiz. When Harris intervened, the defendant stabbed him in the upper right chest, just below his neck. Harris

2

retreated. The defendant then turned back to Ms. Ortiz and continued to repeatedly stab her.

Ms. Ortiz died of her wounds. She had been stabbed 33 times, mostly to the shoulder, back, neck, and scalp. There were both stabbing-type and incision-type wounds. Many of the wounds were superficial, but two stab wounds to Ms. Ortiz's back were fatal because they punctured her lung cavity, causing her to drown in her own blood. Harris survived and was taken to the hospital where he identified the defendant as the attacker in a photographic lineup. The defendant was apprehended a short time later.

The defendant did not testify at trial.

## COUNSELED ASSIGNMENTS OF ERROR NOS. 1 and 2

In these related counseled assignments of error, the defendant argues, respectively, the trial court erred in denying his motion for postverdict judgment of acquittal, and the evidence was insufficient to support the convictions for second degree murder and attempted second degree murder. Specifically, the defendant contends he is guilty of manslaughter because of the presence of the mitigating factors of sudden passion or heat of blood at the time of the killing.

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See La. Code Crim. P. art. 821(B); **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660; **State v. Mussall**, 523 So.2d 1305, 1308-09 (La. 1988). The **Jackson** standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for

3

reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. **State v. Patorno**, 2001-2585 (La. App. 1st Cir. 6/21/02), 822 So.2d 141, 144.

Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). Guilty of manslaughter is a proper responsive verdict for a charge of second degree murder. La. Code Crim. P. art. 814(A)(3). Louisiana Revised Statute 14:31(A)(1) defines manslaughter as a homicide which would be either first degree murder or second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the factfinder finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed. The existence of "sudden passion" and "heat of blood" are not elements of the offense but, rather, are factors in the nature of mitigating circumstances that may reduce the grade of homicide. **State v. Corkern**, 2003-1393 (La. App. 1st Cir. 9/17/04), 897 So.2d 57, 62, writ denied, 2004-2627 (La. 2/18/05), 896 So.2d 29. Manslaughter requires the presence of specific intent to kill or inflict great bodily harm. **State v. Hilburn**, 512 So.2d 497, 504 (La. App. 1st Cir.), writ denied, 515 So.2d 444 (La. 1987).

Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Such state of mind can be formed in an instant. Specific intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. The existence of specific intent is an ultimate legal conclusion to be resolved by the trier of fact.

4

**State v. Nixon**, 2017-1582 (La. App. 1st Cir. 4/13/18), 250 So.3d 273, 290, <u>writ denied</u>, 2018-0770 (La. 11/14/18), 256 So.3d 290.

In his brief, the defendant does not deny that he killed Ms. Ortiz. He argues that he should have been found guilty of manslaughter instead of second degree murder. According to the defendant, his killing of Ms. Ortiz was a crime of passion. Further, the defendant asserts, the fact that she was stabbed 33 times was "indicative of an emotionally charged offense."

Multiple stab wounds are not necessarily indicative of a killing committed in sudden passion or heat of blood caused by provocation sufficient to deprive a person of his self-control and cool reflection. In **State v. Johnson**, 52,762 (La. App. 2nd Cir. 8/14/19), 277 So.3d 1263, 1273, 1279, <u>writ denied</u>, 2019-01670 (La. 7/17/20), 298 So.3d 176, the victim was stabbed 21 times in the chest, arm, neck, buttock, and back, with depths of the stab wounds ranging 0.3 to 10.5 centimeters. The appellate court found no evidence in support of a manslaughter verdict. In **State v. Ellis**, 42,286 (La. App. 2nd Cir. 7/11/07), 961 So.2d 636, 638-39, <u>writ denied</u>, 2007-1641 (La. 1/25/08), 973 So.2d 753, the victim was stabbed 45 times. Finding no merit to the defendant's claim that he should have been convicted of manslaughter, the second circuit found:

> The defendant failed to prove by a preponderance of the evidence that he was provoked to the extent necessary to deprive an average person of his self-control. Even had he been unduly provoked, he should have recovered his senses while lying in wait. In support of his provocation argument, he offered autopsy results revealing that the victim had cocaine in her system. Even if the victim had used every drug known to mankind, she certainly had a right not to be stalked and brutally stabbed to death.
> The jury heard the evidence and rejected the defendant's version of the butchering, finding that this was a murder case. We agree. This is not the sort of sudden provocation contemplated by La. R.S. 14:31. Generally, provocative acts held to rise to the level of mitigating conduct have involved physical threats or actions on the part of the victim. There was no evidence at the crime scene that the victim said or did anything directly to the defendant, other than to plead for mercy. Defendant's claim of manslaughter is untenable.

**Ellis**, 961 So.2d at 640 (citations omitted).

In **State v. Jackson**, 34,076 (La. App. 2nd Cir. 12/6/00), 774 So.2d 1046, 1050-1053, the defendant stabbed his girlfriend's mother, who survived the attack. When the girlfriend intervened, the defendant stabbed her, killing her. Despite the defendant's claim of manslaughter, the defendant's conviction for second degree murder was affirmed. See also **State v. Watson**, 2015-392 (La. App. 3rd Cir. 10/7/15), 175 So.3d 1192, 1194, 1201, writ denied, 2015-2046 (La. 11/7/16), 208 So.3d 897; **State v. Vercher**, 2014-1211 (La. App. 3rd Cir. 5/6/15), 162 So.3d 740, 744-46, writ denied, 2015-1124 (La. 5/20/16), 191 So.3d 1065.

The defendant's claim herein that his stabbing of Ms. Ortiz was caused by provocation sufficient to deprive him of his self-control is unavailing. Ernest Taylor, a witness for the State, testified that he was a prisoner at East Baton Rouge Parish Prison where he met the defendant, who had been incarcerated there shortly after he killed Ms. Ortiz. Taylor's testimony established the following. While in the parish prison, he and the defendant became friends, then intimately involved. The defendant told Taylor that at the time he killed Ms. Ortiz, they were not in a relationship, but the defendant still went to her house and spent nights with her. During one of those visits, the defendant discovered he was missing $80.00. Ms. Ortiz admitted that she took the money. Ms. Ortiz's boyfriend at that time called the defendant and told him that they would pay the money back. They arranged a place to meet, but Ms. Ortiz and her boyfriend did not show up. The defendant called Ms. Ortiz several times, but she did not answer her phone. The defendant went to Ms. Ortiz's apartment, and Ms. Ortiz's boyfriend called the police. At this point, the defendant decided to kill Ms. Ortiz's boyfriend. The defendant put a knife in a tree near Ms. Ortiz's apartment and waited for her boyfriend. However, Ms. Ortiz got off the bus that day without her boyfriend. The defendant decided he would talk to Ms. Ortiz. He approached Ms. Ortiz, and she indicated that she did not want to talk to him. The defendant told her that if she made a noise and someone came out, he

would stab her. Ms. Ortiz screamed and the defendant stabbed her. A neighbor intervened, and the defendant stabbed him. The defendant then continued to stab Ms. Ortiz. After Ms. Ortiz stopped struggling or moving, the defendant went to an abandoned house down the street where he left Ms. Ortiz's bag (a backpack) that she had with her when she got off the bus. The defendant then caught a bus back to his residence and changed his bloody clothes.

A reduction of second degree murder to manslaughter requires that the killing be committed in sudden passion or heat of blood *immediately* caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. R.S. 14:31(A)(1). While the defendant was upset that Ms. Ortiz had taken $80.00 from him, days had passed between the taking and the killing. There was nothing in the scenario, as described by Taylor, to suggest that Ms. Ortiz did anything to provoke the defendant when he approached her with a knife. The defendant told Ms. Ortiz not to make a noise or he would stab her. The neighbors heard Ms. Ortiz yell, "Call, call, call." Whether the defendant stabbed her before or after she yelled this is not clear. Regardless, it is clear the defendant followed through on his threat of stabbing her. The defendant stabbing his victim to death because she screamed for her life is not the type of provocation contemplated by La. R.S. 14:31. See **Ellis**, 961 So.2d at 640. That is, nothing in the moments leading up to the stabbing established that the defendant had been provoked by Ms. Ortiz such that a *reasonable* person in the defendant's position would have lost his self-control. See **State v. Tran**, 98-2812 (La. App. 1st Cir. 11/5/99), 743 So.2d 1275, 1292, writ denied, 99-3380 (La. 5/26/00), 762 So.2d 1101. Mere words or gestures will not reduce a homicide from murder to manslaughter. **State v. Mitchell**, 39,202 (La. App. 2nd Cir. 12/15/04), 889 So.2d 1257, 1263, writ denied, 2005-0132 (La. 4/29/05), 901 So.2d 1063. See **State v. Charles**, 2000-1611 (La. App. 3rd Cir. 5/9/01), 787 So.2d 516, 519, writ denied, 2001-1554 (La. 4/19/02), 813 So.2d 420

7

(an argument alone will not be sufficient provocation to reduce a murder charge to manslaughter). See also **State v. Landry**, 2019-0486 (La. App. 1st Cir. 2/21/20), 297 So.3d 8, 13-14, 18.

Provocation testimony is an issue of credibility. The only evidence of any alleged immediate provocation came from Taylor's testimony. In finding the defendant guilty of second degree murder, it is clear the judge rejected any such testimony. See **State v. Byes**, 97-1876 (La. App. 4th Cir. 4/21/99), 735 So.2d 758, 764, writ denied, 99-1559 (La. 11/5/99), 751 So.2d 231. It was the defendant who had to establish that the mitigating factors of sudden passion or heat of blood were present at the time of the killing, and he failed to do so. See **State ex rel. Lawrence v. Smith**, 571 So.2d 133, 136 (La. 1990); **State v. LeBoeuf**, 2006-0153 (La. App. 1st Cir. 9/15/06), 943 So.2d 1134, 1138, writ denied sub nom., **State ex rel. LeBoeuf v. State**, 2006-2621 (La. 8/15/07), 961 So.2d 1158. See also **Patterson v. New York**, 432 U.S. 197, 206-07, 97 S.Ct. 2319, 2325, 53 L.Ed.2d 281 (1977). The defendant did not testify at trial, nor did any witness testify for the defense. As such, the defendant failed to prove any mitigating factors when he stabbed Ms. Ortiz to death.

The factfinder can accept or reject the testimony of any witness. To resolve conflicting testimony relative to factual matters, the factfinder must make credibility determinations and weigh the evidence. **State v. Eby**, 2017-1456 (La. App. 1st Cir. 4/6/16), 248 So.3d 420, 426, writ denied, 2018-0762 (La. 2/11/19), 263 So.3d 1153. See also **State v. Mire**, 2014-2295 (La. 1/27/16), 269 So.3d 698, 700 (per curiam). The **Jackson** standard of review does not permit a reviewing court to substitute its own appreciation of the evidence for the factfinder's, assess the credibility of witnesses, or reweigh evidence. See **State v. McGhee**, 2015-2140 (La. 6/29/17), 223 So.3d 1136, 1137 (per curiam); **State v. Calloway**, 2007-2306 (La. 1/21/09), 1 So.3d 417, 422 (per curiam). Thus, in the absence of internal contradiction or

irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the factfinder, is sufficient to support a factual conclusion. **State v. Higgins**, 2003-1980 (La. 4/1/05), 898 So.2d 1219, 1226, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict based on an exculpatory hypothesis of mitigatory circumstances presented to it, and rationally rejected. **Eby**, 248 So.3d at 426-27.

It is clear from the guilty verdict that the trial judge rejected the theory that the defendant was so angry when he stabbed Ms. Ortiz to death that he was deprived of his self-control and cool reflection. Questions of provocation and time for cooling are for the factfinder to determine under the standard of the average or ordinary person with ordinary self-control. If a man unreasonably permits his impulse and passion to obscure his judgment, he will be fully responsible for the consequences of his act. **State v. Leger**, 2005-0011 (La. 7/10/06), 936 So.2d 108, 171, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007). The trial judge's verdict finding the defendant guilty of second degree murder was necessarily a rejection of any of the responsive verdicts, including manslaughter. See La. Code Crim. P. art. 814(A)(3); **State v. Leon**, 93-2511 (La. 6/3/94), 638 So.2d 220, 222 (per curiam).

After a thorough review of the record, we find that the evidence supports the guilty verdict. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of the second degree murder of Ms. Ortiz. See **Calloway**, 1 So.3d at 418.

Regarding the attempted second degree murder conviction, the only argument the defendant asserts in brief is that when Harris tried to intervene, he (the defendant) "amidst his fit of rage, stabbed him one time."

To sustain a conviction for attempted second degree murder, the State must prove that the defendant intended to kill the victim and committed an overt act tending toward the accomplishment of the victim's death. La. R.S. 14:27; 14:30.1. Although the statute for the completed crime of second degree murder allows for a conviction based on "specific intent to kill or to inflict great bodily harm," La. R.S. 14:30.1, attempted second degree murder requires specific intent to kill. **State v. Huizar**, 414 So.2d 741, 746 (La. 1982). Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. La. R.S. 14:10(1); **State v. Bishop**, 2001-2548 (La. 1/14/03), 835 So.2d 434, 437.

Despite the claim herein, Taylor's testimony contradicts the defendant's "fit of rage" theory. Taylor testified that the defendant told him that when Harris came outside to help Ms. Ortiz, the defendant wanted to kill Harris by stabbing him in the heart. The defendant told Taylor that he did not want to leave any eyewitnesses behind. Accordingly, the trial judge rationally concluded that the defendant had the specific intent to kill Harris and that he was guilty of the attempted second degree murder of Harris. See **Eby**, 248 So.3d at 426-27; **Calloway**, 1 So.3d at 422.

These counseled assignments of error are without merit.

## PRO SE ASSIGNMENT OF ERROR

In his sole pro se assignment of error, the defendant accuses the trial judge of being racist and argues that the trial judge should have been recused from hearing the case.

A trial judge shall be recused when he "[i]s biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial...." La. Code Crim. P. art. 671(A)(1). There is a presumption that

10

a trial judge is impartial, and in order to obtain a recusation based on bias, prejudice, and personal interest, the party seeking the recusation must establish more than conclusory allegations. **State v. Boudreaux**, 95-153 (La. App. 5th Cir. 9/20/95), 662 So.2d 22, 27-28, writ denied, 96-0840 (La. 5/30/97), 694 So.2d 233. The failure to file a written motion to recuse waives this error. **State v. Crothers**, 278 So.2d 12, 14 (La.), cert. denied, 414 U.S. 1096, 94 S.Ct. 731, 38 L.Ed.2d 555 (1973); **State v. Anderson**, 96-1515 (La. App. 3rd Cir. 4/29/98), 714 So.2d 766, 768, writ denied, 98-1374 (La. 10/9/98), 726 So.2d 25.

Louisiana Code of Criminal Procedure article 674 provides:

> A party desiring to recuse a trial judge shall file a written motion therefor assigning the ground for recusation. The motion shall be filed prior to commencement of the trial unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after the facts are discovered, *but prior to verdict or judgment*. If a valid ground for recusation is set forth in the motion, the judge shall either recuse himself, or refer the motion for hearing to another judge or to a judge ad hoc, as provided in Article 675. (Emphasis added).

There was no timely filed motion to recuse in the instant matter. In fact, no motion to recuse has ever been filed. Accordingly, there is nothing for this court to review.

The pro se assignment of error is without merit.

**CONVICTIONS AND SENTENCES AFFIRMED.**

11